COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



THERESA NANOS,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-06-00173-CR
 


Appeal from the


168th District Court 


of El Paso County, Texas 


(TC# 20060D00352) 



O P I N I O N


 This is an appeal from a jury conviction for the offense of aggravated assault with a deadly
weapon. The jury assessed punishment at four years' imprisonment. We affirm.

I. SUMMARY OF THE EVIDENCE


 The complainant Crystal Rodriguez walked out of her house after a dispute with her mother
on the night of January 15, 2006. She was four months pregnant. As she was walking, an
acquaintance named Gabe Torres pulled up in his car and offered her a ride. Rodriguez asked Torres
to give her a ride to a friend's house. The friend was not home, and, after going to a 7-Eleven store,
they drove to Torres's house located at 10108 Chinaberry in El Paso, Texas. Upon arrival at Torres's
house, Rodriguez stated that Appellant and another girl were blocking the driveway. Appellant was
hysterical and yelling, and she had apparently been breaking flower pots with a hammer, although
Rodriguez actually only saw Appellant by some already broken pots, swinging a hammer. Appellant
was screaming out that she was owed $20 and demanding to know who was going to pay her the
$20. Rodriguez stated that she was frightened, and both she and Torres remained in the car. 
Appellant approached the car and yelled at them, "Either one of you has to bust out," and, "Either
you give me your 20 or you've got to find me some cocaine [and] I know you have some on you." 
Rodriguez stated that she learned that someone in the house owed the money to the Appellant. She
also related that she knew that illegal substances were consumed at the house, because she had
participated in such activity there in the past.

 Appellant told Torres to park his car on the side of the house. As Torres was doing so,
Appellant grabbed Rodriguez's hair through the partially opened car window, and she walked with
the car until it was parked. Rodriguez surmised that this was done so that they could not leave. 
Rodriguez testified that Appellant held a hammer in her other hand and stated, "I don't want . . . this
to get ugly because it is. I'm going to open this girl's head with the hammer." As she stated this,
Appellant was tapping the car window with the hammer. Rodriguez felt threatened, and she asked
Appellant to please let her go.

 After Torres parked the car, Rodriguez got out of the vehicle and Appellant told her to give
her the money. Rodriguez stated that neither had any money nor did she owe Appellant any money. 
She started to head to the house to ask a man named Patrick to give Appellant the money, but the
police arrived. Rodriguez went to the police and spoke to the officers. Appellant tried to leave in
her car, but she was stopped by the police and placed next to Rodriguez. Rodriguez later found out
that the police had arrested Appellant.

 Jaime Castillo, a sergeant with the El Paso Police Department, testified that he received a call
regarding a woman with a knife. When he arrived at the residence, he saw Appellant leaving in her
car. He blocked the driveway to prevent her from leaving. He had Appellant get out of her car, and
he questioned her regarding what was going on in the house. Appellant repeatedly stated that some
money was owed to her.

 When Officer John Surface and his partner arrived at the Chinaberry address at about 12:05
a.m., Sergeant Castillo was already there. Officer Surface interviewed Rodriguez, Torres, and an
individual named Patrick. He also spoke with Appellant. She related that Patrick owed her money. 
She was jittery and irate, but she was not intoxicated. There were broken and shattered flower pots
in the front of the residence, with potting soil scattered across both the driveway and porch area. 
During the course of the investigation, Officer Surface retrieved a hammer from Appellant's vehicle. 
It was found on the top of the center console. Appellant was placed under arrest.

 During cross-examination, Officer Surface stated that he did not search Appellant's vehicle
as a search incident to an arrest. Rather, he observed the hammer to be in plain view in the center
console.

 Gabe Torres testified on behalf of Appellant. In his version of events, Rodriguez came to
his house, and they left to go to her friend's house. When her friend was not home, they went to a
7-Eleven store to use the phone. They then went back to Gabe's house. He saw Appellant's car, but
nothing seemed out of the ordinary. When he saw Appellant, she was irate, and she was yelling and
screaming as she approached the car. He did not see a hammer in her hand, and he did not think she
was threatening anyone. While it was dark, Torres testified that he would have been able to see a
hammer.

 When Appellant first approached the car, Rodriguez was calm, but then both Appellant and
Rodriguez started using foul language. Torres parked the car. He testified that Appellant never
struck his car, and she never threatened him or Rodriguez with a hammer. He never saw Appellant
reach into the car, and he never felt threatened by Appellant's actions.

 The State utilized the testimony of Officer Surface in rebuttal. He testified that Torres told
him at the scene that Appellant approached the car in an angry manner, and that she had a hammer
and she was waving it in the air. She grabbed Rodriguez's hair during the argument, and she was
striking the vehicle with the hammer. Officer Surface also related that Torres told him that
Appellant had threatened to smash Rodriguez's head in with the hammer.

 During deliberations, the jury asked the court where the hammer was found inside the car. 
Specifically, the note asked whether the hammer was inside, or on top of, the console. The court
responded by stating that the jury were the exclusive judges of the facts proved, of the credibility of
the witnesses, and of the weight to be given to their testimony, and that they had before them all the
evidence that was presented in the case.

II. DISCUSSION


 In Issue No. One, Appellant maintains that the court erred by refusing to give a jury
instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure, which provides that
no evidence obtained by an officer or other person in violation of the laws or constitutions of Texas
or the United States shall be admitted in evidence against the accused on the trial of any criminal
case. See Tex. Code Crim. Proc. Ann. art. 38.23. It also provides that, where the legal evidence
raises such an issue, the jury shall be instructed that, if it believes, or has a reasonable doubt, that the
evidence was obtained by such a violation, then it shall disregard any such evidence. Id. An article
38.23 instruction must be included in the jury charge only if there is a factual dispute about how the
evidence was obtained. Garza v. State, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004). A fact issue
concerning whether the evidence was legally obtained may be raised "'from any source, and the
evidence may be strong, weak, contradicted, unimpeached, or unbelievable.'" Id. If a defendant
successfully raises a factual dispute over whether evidence was illegally obtained, inclusion of a
properly worded article 38.23 instruction is mandatory. Bell v. State, 938 S.W.2d 35, 48 (Tex. Crim.
App. 1996).

 Appellant's specific contention is that there is a factual dispute regarding whether the
hammer was seen in plain view by Officer Surface. "There is no legitimate expectation of privacy
. . . shielding that portion of the interior of an automobile which may be viewed from outside the
vehicle by either inquisitive passersby or diligent police officers." Texas v. Brown, 460 U.S. 730,
740, 103 S. Ct. 1535, 1542 (1983). The "plain view" doctrine requires that: (1) law enforcement
officials have a right to be where they are; and (2) it must be immediately apparent that the item
seized constitutes evidence (that is, there is probable cause to associate the item with criminal
activity). Ramos v. State, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996). The "immediately
apparent" prong of the plain-view analysis does not require actual knowledge of incriminating
evidence. The question is whether the officer has probable cause to believe that the evidence
discovered is associated with criminal activity. Joseph v. State, 807 S.W.2d 303, 308 (Tex. Crim.
App. 1991); Fields v. State, 932 S.W.2d 97, 107 (Tex. App.--Tyler 1996, pet. ref'd).

 After interviews with the individuals at the scene, Officer Surface looked inside Appellant's
vehicle. The officer stated he saw the hammer on the console. In another part of his testimony, he
stated that the hammer was in plain view in the console. In either event, the hammer was in view. 
In this instance, we find that there is no factual dispute regarding Officer Surface's finding of the
hammer.

 Furthermore, even if the court erred in denying the requested instruction, we find that the
error, if any, was not harmful. Under Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1984), if a defendant timely objects to error in the jury charge, as here, we must reverse, if there was
"some harm" to the accused resulting from the error. In deciding whether there was some harm, we
must assay the degree of harm by considering the entire charge, the state of the evidence, argument
of counsel, and any other relevant information revealed by the record of the trial as a whole. Id.

 Here, there was evidence independent of the finding of the hammer that implicated
Appellant. Crystal Rodriguez testified that Appellant threatened her with the hammer, and Gabe
Torres gave the officers at the scene a similar rendition of events, notwithstanding his contrary
testimony at trial. Furthermore, there was evidence of the broken flower pots and strewn potting
soil. We find that no harm occurred. See Chandler v. State, 855 S.W.2d 38, 42 (Tex. App.--Fort
Worth 1993, no pet.); Howes v. State, 120 S.W.3d 903, 908 (Tex. App.--Texarkana 2003, pet. ref'd). 
Issue No. One is overruled. (1)

 In Issue No. Two, Appellant contends that the court erred by admitting evidence of
extraneous conduct that was clearly more prejudicial that probative. Crystal Rodriguez testified that
Appellant told her to either give her $20 or find her some dope. Appellant objected on the basis of
an extraneous offense. This objection was overruled. Without objection, she then testified that
neither she nor Torres owed Appellant money or cocaine.

 During cross-examination, defense counsel received an affirmative response from Rodriguez
regarding Torres's cocaine usage. Rodriguez also stated during cross-examination that Appellant
stated, "Well, I need to get my money. I need my money or some dope." Again, in response to
questioning during cross-examination, Rodriguez stated that Appellant wanted the money, because
she had fronted some cocaine to a person who was in the house.

 The trial court's admission of evidence is reviewed under an abuse of discretion standard. 
Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The appellate court must uphold
the trial court's ruling, if the admission of the evidence was within the zone of reasonable
disagreement. Id. (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op.
on reh'g)).

 Appellant contends that the evidence of Appellant's drug involvement was more prejudicial
than probative. However, that objection was not raised at trial. This contention has not been
preserved on appeal. See Ho v. State, 171 S.W.3d 295, 303 (Tex. App.--Houston [14th Dist.] 2005,
pet. ref'd). Furthermore, Appellant did not continue to object to the drug references each time the
evidence was offered. Therefore, she has waived her extraneous offense complaint. See Rodriguez
v. State, 955 S.W.2d 171, 175 (Tex. App.--Amarillo 1997, no pet.). Issue No. Two is overruled.

III. CONCLUSION


 The judgment of the trial court is affirmed.


 KENNETH R. CARR, Justice


July 19, 2007


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)

1. We note that Appellant contended, during oral argument, that the purported illegality of her arrest should have
been submitted to the jury in a 38.23 instruction. However, this matter was not raised in the argument portion of
Appellant's brief. An appellant may not raise new points during oral argument; therefore, we will not address this
contention, because it was not included in Appellant's brief. See Tex. R. App. P. 39.2; Moore v. State, 165 S.W.3d 118,
122 n.1 (Tex. App.--Fort Worth 2005, no pet.).