Gerald Robert BILBREY, Appellant,

v.

The STATE of Texas, Appellee.

No. 58476.

Court of Criminal Appeals of Texas,
Panel No. 1.

Jan. 23, 1980.

Rehearing Denied March 19, 1980.

Ted Redington, Dallas, for appellant.

Henry Wade, Dist. Atty., T. Michael Sutton, Michael E. Keasler, and Michael R. Gillett, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and DOUGLAS and W. C. DAVIS, JJ.

## OPINION

DOUGLAS, Judge.

Bilbrey was convicted of aggravated robbery. Upon a finding of "true" by the jury to allegations of two prior convictions, punishment was assessed at life under V.T.C.A., Penal Code, Section 12.42(d).

Appellant now contends that the testimony of his accomplice, Dennis Wichmann, was not corroborated sufficiently to support the verdict.

Jess McBride, manager of Guy's Cut Rate Drive-In, testified that, after Wichmann had robbed him and co-workers at gunpoint and had taken a paper bag with the proceeds of the robbery to Bradford Ficke's Volvo automobile, he took a pistol and followed Wichmann outside. He testified that he looked around carefully because Wichmann had stated that his confederate was outside with a shotgun.

Upon seeing Wichmann and a second party whom he did not identify in or about Ficke's car, McBride fired his pistol and both persons fled onto a highway bridge connecting Dallas with Irving.

Officer M. S. Richardson testified that after he received a call to respond to a robbery at Guy's, he encountered McBride in the parking lot and was told that the men were fleeing across the bridge.

Richardson testified that when he turned on his red light as he approached Bilbrey on the bridge Bilbrey threw a brown paper sack over the bridge rail and then began to climb over the rail himself, looked down, and stopped. The bridge at that point was some thirty to forty feet above the river bed below.

Officer J. E. Long testified that he was behind Officer Richardson and that Richardson pointed out to him the spot where Bilbrey had thrown the sack over the rail. Long later aimed a light down from that spot and saw the sack on a sand bar and pointed it out to an officer, who retrieved it.

The sack contained the money stolen from McBride, Ficke and the cash register, as well as McBride's and Ficke's wallets.

Richardson testified that, upon his apprehension, Bilbrey asked if Richardson would take care of a Pontiac automobile parked on the Irving side of the bridge, towards which Bilbrey and Wichmann had been running. The automobile was registered to Bilbrey's father but displayed stolen license plates.

Neither the pistol displayed by Wichmann nor the shotgun Wichmann testified Bilbrey had carried was found.

■ The evidence of Bilbrey's flight, the car secreted across the bridge and displaying stolen license plates, and the possession by Bilbrey of the fruits of the crime sufficiently corroborate Wichmann's testimony that the robbery was a jointly planned and executed venture.

Bilbrey next contends the court erred in refusing his requested instruction that mere presence is insufficient to corroborate accomplice testimony.

■ Bilbrey presented no evidence. No testimony presented by the State raised the issue of mere presence. Only Officer Richardson identified Bilbrey, and his testimony

shows that Bilbrey was fleeing with the fruits of the crime. Where no testimony raises the issue of mere presence, no instruction is required. *Dillard v. State*, 550 S.W.2d 45 (Tex.Cr.App.1977).

Appellant also contends the court erred in its instructions by failing to apply the law of parties to the facts.

■ Appellant's objection at trial stated merely that "[the court's charge] fails to adequately [sic] apply the law to the facts." The objection is not specific enough to apprise the court of what is complained of and presents nothing for review. Article 36.14, V.A.C.C.P.; *Chavira v. State*, 167 Tex.Cr.R. 197, 319 S.W.2d 115 (1958); *Bryant v. State*, 163 Tex.Cr.R. 463, 293 S.W.2d 646 (1956); *Soto v. State*, 161 Tex.Cr.R. 239, 275 S.W.2d 812 (1955).

■ Neither was the failure to apply the law of parties to the facts fundamental error. In *Romo v. State*, 568 S.W.2d 298 (Tex.Cr.App.1978), we addressed the same question:

"A charge on the law of parties enlarges a defendant's criminal responsibility. The charge benefits the State and not the defendant. See *Ransonette v. State*, 550 S.W.2d 36, 42 (Tex.Cr.App.1977). In a case where a charge on the law of parties is applicable, it is usually the State that insists on and is entitled to have such a charge, including an application of the law to the facts, submitted to the jury. Such a charge fits the State's theory of a case when, as in this case, a co-defendant is the principal actor and the defendant is guilty, if at all, as a party because he solicited, encouraged, directed, aided, or attempted to aid the co-defendant. However, if the court fails to apply the law of parties to the facts of the case, it might be better trial strategy for the defense counsel not to ask for such a charge. It might very well be to the benefit of such a defendant not to have the State's theory so clearly blue-printed and delineated by a charge applying the law of parties to the facts. It would permit the defendant to make a stronger jury argument that the State had not proved its case since

the evidence clearly showed that appellant did not shoot the deceased."

Appellant's contention is overruled.

Bilbrey next contends that the court's refusal to permit appellant to elicit testimony from Wichmann about Wichmann's conviction for burglary in California in 1973 violated appellant's right to confrontation under the Sixth Amendment. Testimony outside the presence of the jury shows that Wichmann successfully served a three-year probation upon that conviction.

Article 38.29, V.A.C.C.P., provides that:

"The fact that a defendant in a criminal case, or a witness in a criminal case, is or has been, charged by indictment, information or complaint, with the commission of an offense against the criminal laws of this State, of the United States, or any other State shall not be admissible in evidence on the trial of any criminal case for the purpose of impeaching any person as a witness unless on trial under such indictment, information or complaint a final conviction has resulted, or a suspended sentence has been given and has not been set aside, or such person has been placed on probation and the period of probation has not expired. In trials of defendants under Article 36.09, it may be shown that the witness is presently charged with the same offense as the defendant at whose trial he appears as a witness."

Appellant cross-examined Wichmann at length about possible prejudice resulting from his own involvement in and indictment for the instant offense. He elicited that Wichmann had been offered an eight-year sentence upon agreeing to testify, in contrast to a previous offer of thirty years for a plea of guilty. He now contends that he should have been permitted to examine Wichmann about the burglary conviction to show a general lack of truthfulness.

Appellant cites *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in support of his contention. In *Davis*, the Supreme Court held that to refuse to allow cross-examination of a witness about a ju-

venile probation *which had not expired* so as to show motive and bias because of possible pressure upon the witness by the prosecution violated the accused's right to confrontation. But the Court in *Davis* repeatedly distinguished between the use of a prior conviction merely to show lack of truthful character and its use to show bias or motive:

"We granted certiorari in this case to consider whether the Confrontation Clause requires that a defendant in a criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination *directed at possible bias deriving from the witness' probationary status* as a juvenile delinquent when such an impeachment would conflict with a State's asserted interest in preserving the confidentiality of juvenile adjudications of delinquency. (Emphasis supplied)

" * * *

"In opposing the protective order, petitioner's counsel made it clear that he would not introduce Green's juvenile adjudication as a general impeachment of Green's character as a truthful person, but, rather, to show specifically that at the same time Green was assisting the police in identifying petitioner he was on probation for burglary. * * * Green's record would be revealed only as necessary *to probe Green for bias and prejudice and not generally to call Green's good character into question.* (Emphasis supplied).

" * * *

" . . . One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore, Evidence § 940, p. 775. (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy*, 360 U.S. 474, 496 [79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377] (1959) [Footnotes omitted]

" . . . The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer, cf. *Alford v. United States*, 282 U.S. 687, [51 S.Ct. 218, 75 L.Ed. 624] (1931), as well as of Green's possible concern that he might be a suspect in the investigation. [Footnote omitted]

" * * *

"We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender. Cf. *In re Gault*, 387 U.S. 1, 25, [87 S.Ct. 1428, 1442, 18 L.Ed.2d 527] (1967). Here, however, petitioner sought to introduce evidence of Green's probation for the purpose of suggesting that Green was biased and, therefore, that his testimony was either not to be believed in his identification of petitioner or at least very carefully considered in that light. Serious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry. *In this setting* we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record—if the prosecution insisted on using

him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness. (Emphasis supplied)

"  *  *  *

"The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination *for bias* of an adverse witness. . . ." (Emphasis supplied)

The concurring opinion of Mr. Justice Stewart is also enlightening in this regard:

"The Court holds that, in the circumstances of this case, the Sixth and Fourteenth Amendments conferred the right to cross-examine a particular prosecution witness about his delinquency adjudication for burglary and his status as a probationer. Such cross-examination was necessary in this case in order 'to show the existence of possible bias and prejudice . . . ,' ante, at [317, 94 S.Ct. at 1111.] In joining the Court's opinion, *I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions.*" (Emphasis supplied)

In the instant case, Wichmann's probation had been completed. No pressure

based upon that probation could be brought to hear upon Wichmann. The testimony was offered only to impeach Wichmann's general credibility. *Davis* does not require that we ignore the clear mandate of Article 38.29 in order to permit impeachment of general credibility.

■ Appellant's contention is overruled.

Appellant next contends the court erred in refusing to quash the indictment for failure to allege a culpable mental state as to an essential element of the offense.

The indictment, in pertinent part, alleges that appellant:

" . . . while in the course of committing theft and with intent to obtain and maintain control of the property of JESS McBRIDE, hereinafter called 'Complainant', the said property being current money of the United States of America, without the effective consent of the said Complainant and with intent to deprive the said Complainant of said property, did then and there by using and exhibiting a deadly weapon, to-wit: a handgun, intentionally and knowingly threaten and place the said complainant in fear of imminent bodily injury, . . ."

Appellant urges that V.T.C.A., Penal Code, Section 6.02[1] requires that the additional allegation be made in an indictment under V.T.C.A., Penal Code, Section 29.03,[2] that the accused intentionally and knowingly exhibited the weapon.

---

1. V.T.C.A., Penal Code, Section 6.02(a), provides that:

"Except as provided in Subsection (b) of this section, a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires."
Section 6.02(b) provides that:

"If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element."

2. V.T.C.A., Penal Code, Section 29.03, provides that:

"(a) A person commits an offense if he commits robbery as defined in Section 29.02 of this code, and he:

"(1) causes serious bodily injury to another; or

"(2) uses or exhibits a deadly weapon.

"(b) An offense under this section is a felony of the first degree.

V.T.C.A., Penal Code, Section 29.02, provides that:

"(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 of this code and with intent to obtain or maintain control of the property, he:

"(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

"(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

"(b) An offense under this section is a felony of the second degree."

■ We decline to adopt appellant's proffered construction of Section 29.03. The required elements of an indictment for aggravated robbery without actual injury under V.T.C.A., Penal Code, Section 29.-03(a)(2), are that 1) a person 2) in the course of committing theft 3) with the intent to obtain or maintain control of property 4) intentionally or knowingly 5) threatens another with, or places another in fear of 6) imminent bodily injury or death and 7) uses or exhibits 8) a deadly weapon.

All the required elements are present in the instant indictment.

Appellant next contends the court erred in allowing Wichmann to testify over objection upon redirect examination that he had told the same story to police, before any offer was made by the prosecution, as he testified to at trial. Appellant characterizes this testimony as improper bolstering.

■ Appellant attempted to impeach Wichmann upon bias and motive and to raise the inference that Wichmann's testimony was a recent fabrication based upon the State's offer of leniency. Rehabilitation of the witness by showing he had told the same version of the facts before any offer was made was not improper. No error is shown.

■ Bilbrey next contends that the court erred in allowing the prosecution to argue that appellant's flight constituted evidence of guilt. The contention is without merit. *Carvajal v. State*, 529 S.W.2d 517 (Tex.Cr. App.1975).

Bilbrey also contends that the court erred in permitting the prosecutor to argue that Wichmann's demeanor was a result of fear of Bilbrey. The argument complained of was as follows:

" . . . But, Mr. Redington says, he's timid, he's hesitant, he acts so— somewhat afraid. Well, I think it is a reasonable deduction from his testimony and from his demeanor—

"MR. REDINGTON: Your Honor, I believe this is an improper argument, outside the record, and immaterial.

"THE COURT: Overruled.

"MR. KEASLER: You saw his demeanor on the stand. And I think it is a reasonable deduction that he might have good reason to be afraid of this man because look at the evidence you have got before you. You can look at him, who is the older of the two? Who provides the guns? Who provides the car with the stolen license plates? Who gets the cushy safe job outside, keeping a lookout? Who on the other hand is running the risk? Who goes inside? Who moves the car over to the other side? Who makes the long walk back? . . ."

■ The complained of argument was invited by appellant's argument and was a reasonable deduction from the evidence. No error is shown.

Appellant finally contends that the prosecutor's statement about panel member Cook that "Judge, the State would agree that he could be excused. The State has no objection." constituted reversible error.

Cook stated that he knew appellant and that "If I had a preference, I would rather not sit on the jury."

After the complained of statement, the following colloquy occurred:

"MR. REDINGTON: I would like to take this up to the bench, please, sir.

(Whereupon, the following proceedings were had outside the presence and hearing of the Jury Panel in the presence of the Court, Counsel, Mr. Cook, and the Court Reporter.)

"MR. REDINGTON: I would want to challenge this, he seems to be qualified for Jury service.

"THE COURT: Okay. Go ahead with the Voir Dire."

■ No further mention of Cook is made in the record. There is no showing whether he was excused. No objection was properly taken; no relief was sought. Nothing is presented for review.

The judgment is affirmed.