**Dana Ambrose CHANDLER, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–91–469–CR.**

Court of Appeals of Texas,
Fort Worth.

April 14, 1993.

Rehearing Overruled June 2, 1993.

Publication Ordered June 2, 1993.

Ward Casey, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and John A. Stride, Asst., Fort Worth, for the State.

Before FARRIS, HICKS and HOPKINS (Retired Sitting by Assignment), JJ.

## OPINION

HOPKINS, Justice (Retired).

Dana Ambrose Chandler appeals his conviction by a jury of the offense of aggravated robbery. *See* TEX.PENAL CODE ANN. § 29.03(a)(2) (Vernon Supp.1993). The court assessed his punishment at sixty years in the Texas Department of Criminal Justice, Institutional Division. Chandler complains in five points of error that the trial court erred because: (1) Chandler was convicted of aggravated robbery, a first degree felony, upon an indictment that only alleged robbery, a second degree felony with a maximum punishment of twenty years; (2) the court's charge authorized conviction for aggravated robbery without requiring proof of all the elements of the offense; (3) the court's charge failed to require proof that Chandler acted intentionally, knowingly, or recklessly in using or exhibiting a deadly weapon; (4) the court's charge failed to require proof that Chandler used or exhibited a deadly weapon to threaten or place another in fear of imminent bodily injury or death; and (5) the court's charge failed to instruct the jury that "firearm means any device, designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance."

We affirm.

On July 17, 1990, about 9:30 p.m., Doris Moncrief and Ruth Ann Williams entered the Lavonia Bellah Dance Studio on Camp Bowie, in Fort Worth, Tarrant County, Texas, to arrange dance lessons for Ruth's husband. As they left the building, Doris noticed a man walking towards them and disturbed by his demeanor, she urged Ruth to go back inside the building. Before they could do so, Chandler grabbed the women by their arms, placed himself between them, pointed a handgun, and instructed them to get in Doris's two-month-old red Ford Mustang convertible. A passer-by tried to assist the women but Chandler threatened him with a gun and told him to go on about his business or he would blow him away. Chandler jumped in the back seat of the convertible and ordered Doris to drive.

Chandler told the women to drive around, and then ordered them to pull over to the curb and demanded they give him their jewelry. He then told Doris to run through an intersection and instructed her to stop again at which point he asked them for their money. A man in a Ford pickup truck, later identified as Clyde Reed, was driving along Camp Bowie when he saw Chandler and the women outside the dance studio and thought that the situation looked suspicious. He drove around the

block, passed by a second time, waited until the Mustang passed him, and returned to the dance studio. He spoke to some by-standers before giving chase to the Mustang. He found them in the residential area, pulled up and asked if everything was all right. Ruth made a motion with her hand and waved him on while Doris looked at him as if she was frightened. Chandler then pointed the gun to Ruth's left jaw bone and asked her not to do that again. Reed then called 911 from his mobile phone.

Chandler made Doris and Ruth drive around the Camp Bowie/Montgomery area for about twenty to twenty five minutes before telling them to go to a church parking lot on Camp Bowie and Montgomery. He then opened the car doors and told them to get out. Doris had trouble getting out of the car because her foot became entangled. Chandler then put the gun to Doris's head and the gun went off, tattooing Doris's face with gunpowder. The women ran from the car and threw themselves in some bushes. After Chandler sped away in Doris's Mustang, they ran to a nearby McDonald's for assistance.

Approximately ten minutes later, Paramedic Starrett Keele was driving his ambulance through the I–35/I–30 mixmaster when he came upon a person directing traffic around the wreckage of a red car containing an injured man, identified later as Chandler. Keele and his partner rendered assistance and transported the unconscious Chandler to John Peter Smith Hospital. While en route, Keele realized that Chandler was gaining consciousness and had thrown something under the stretcher in the ambulance. Later, a ring was found on the floor of the ambulance and two were found underneath the gurney. An ER nurse gave the police two more rings found tucked in the pressurized "Mask" pants the paramedics had placed on Chandler to regulate his blood pressure. The rings were those taken in the robbery.

Keele and two police officers saw a handgun on the floorboard of the Mustang. The other ring that belonged to Doris was also discovered. The Mustang was totaled.

In five related points of error, Chandler complains that he was improperly convicted of aggravated robbery upon proof of less than all the elements of the offense because the indictment and the court's charge failed to attach a separate culpable mental state to the deadly weapon element of the offense and because there was insufficient evidence the weapon used really was a "firearm." Chandler admits he did not object to the indictment or the application paragraph of the charge.

■ Chandler first argues that the failure to allege a culpable mental state in connection with the deadly weapon element renders the indictment defective. A defendant cannot fail to object to a charging instrument, be convicted, then later claim that there was error in going to trial upon the defective instrument. *See State v. Murk*, 815 S.W.2d 556, 558 (Tex.Crim.App. 1991). In *Murk*, the appellant moved for an instructed verdict on the ground that the information failed to allege an offense on which he could be tried. The error was held waived and the motion was overruled. *Id.* at 557. It is clear from a reading of the transcript that appellant was well aware that the State had charged him with aggravated robbery using a deadly weapon—there are several pretrial documents filed by appellant stating the offense with which he was charged.

Additionally, appellant argues his indictment is not controlled by the ruling in *Bilbrey v. State*, 594 S.W.2d 754 (Tex.Crim. App. [Panel Op.] 1980). We disagree. In *Bilbrey*, the defendant also argued his indictment failed to allege a culpable mental state for using the deadly weapon. *Id.* at 758.

The indictment, in pertinent part, alleges that appellant:

> "... while in the course of committing theft and with intent to obtain and maintain control of the property of JESS McBRIDE ... without the effective consent of the said Complainant and with intent to deprive the said Complainant of said property, did then and there by using and exhibiting a deadly weapon, to wit: a handgun, in-

tentionally and knowingly threaten and place the said complainant in fear of imminent bodily injury, . . ."

Appellant urges that V.T.C.A., Penal Code, Section 6.02 requires that the additional allegation be made in an indictment under V.T.C.A., Penal Code, Section 29.03, that the accused intentionally and knowingly exhibited the weapon. *Id.*

We decline to adopt appellant's proffered construction of section 29.03. The required elements of an indictment for aggravated robbery without actual injury under TEX.PENAL CODE ANN. § 29.03(a)(2) are that 1) a person 2) in the course of committing theft 3) with the intent to obtain or maintain control of property 4) intentionally or knowingly 5) threatens another with, or places another in fear of 6) imminent bodily injury or death and 7) uses or exhibits 8) a deadly weapon. *Bilbrey,* 594 S.W.2d at 759. While the indictment language in *Bilbrey* does differ from that before us, still the broader language of the case is applicable. Where the State has proven these elements are present, the State is not required to prove as an additional element that the firearm was intentionally and knowingly used. It has been held that:

A person commits the first degree felony of aggravated robbery under Tex.Penal Code Ann. § 29.03 (Vernon 1974), when he uses or exhibits a deadly weapon in the commission of a § 29.02 robbery.

*Benavides v. State,* 763 S.W.2d 587, 588 (Tex.App.—Corpus Christi 1988, pet. ref'd). Point of error one is overruled.

In his next three points or error, Chandler groups all of his arguments and authorities so we will address them together. He alleges that the court's charge failed to attach a separate culpable mental state to the deadly weapon element of the offense. There is a two-step process we must undertake to review a trial court's charge for potential error. First, the appellate court must determine whether error exists in the charge. Second, the court must determine whether sufficient harm

was caused by the error to require reversal of the conviction. *See Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986).

We note that the deadly weapon element of an aggravated robbery charge does not carry a separate culpable mental state, nor is it required to carry one. Only each offense is required to have a culpable mental state, not each element of an offense. TEX.PENAL CODE ANN. § 6.02 (Vernon 1974). The trial court's charge properly contained both the general intent and the specific intent of simple robbery. TEX.PENAL CODE ANN. § 29.02 (Vernon 1989). Therefore, aggravated robbery contains the same minimum culpable mental states as simple robbery. TEX.PENAL CODE ANN. § 29.03. Accordingly, we find that the trial court's charge did comply with the requisites of the statute.

Even if we are incorrect in holding there need not be a specific mental state charged in connection with the use of the firearm during the robbery, we hold appellant has failed to show reversible error under the facts of the case. The degree of harm that must be present to require reversal of a case depends upon whether the error was preserved or unpreserved. For error that was not preserved at trial, as the case is here, the error must have been so harmful that the defendant was denied a "fair and impartial trial." In other words, a defendant must have suffered actual "egregious" harm. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim. App.1985), *aff'd on remand,* 724 S.W.2d 805 (Tex.Crim.App.1986), *cert. denied,* 107 S.Ct. 1901, 481 U.S. 1019, 95 L.Ed.2d 507 (1987); *Hamilton v. State,* 804 S.W.2d 171 (Tex.App.—Fort Worth 1991, pet. ref'd). For both preserved and unpreserved charging error, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171.

In the instant case, Chandler did not merely have a gun in his pocket, he used the gun repeatedly to threaten his victims and passers-by who tried to help the two women. Ultimately, the gun discharged as he held it up alongside the head of one victim when she did not move fast enough to suit him; luckily for the victim, she only suffered powder burns due to the angle of the bullet's trajectory and her reflex action in jerking away from the gun. At trial, the contested issues focused on: the lack of any description in police reports of the robber; whether there could have been someone else; and whether he was correctly identified as the armed robber as the crime occurred at night. Defense counsel admitted there was an aggravated robbery. There was no timely objection to the charge preserving the claimed error and we hold Chandler did not suffer any harm as a result of the wording of the trial court's charge to the jury. Points of error two through four are overruled.

Finally, Chandler argues that the charge also failed to instruct the jury that "firearm means any device, designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance." His exact complaint is unclear, but his argument implies the State failed to prove the item used was in fact a firearm rather than a starter's pistol. He complains the court failed to define the term "firearm." No such definition was requested, and there is no objection to the lack of such definition in the charge.

The gun recovered from the wrecked Mustang was not admitted into evidence. As of the time of trial, the crime scene officer who secured the evidence was dead, and there was no one who could verify the chain of custody. There was, however, positive unimpeached testimony from other witnesses that the gun Chandler pointed at them or that was seen in the car after the wreck was a revolver, probably a .38 or .357.

Texas case law is clear that the actual "gun" need not be put in evidence for the jury to find a deadly weapon was used in the commission of the offense. *Benavides*, 763 S.W.2d at 588–89 (jury may make reasonable inferences from the witnesses' testimony that it was a firearm); *Rogers v. State*, 795 S.W.2d 300, 303 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (gun was apparently not recovered; clerk testified weapon looked like photograph of gun prosecutors displayed at trial). Point of error five is overruled.

The judgment is affirmed.