

**In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00201-CR
_____

SAMUEL LYN MCMILLON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 08F0425-202

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Samuel Lyn McMillon appeals his conviction by a Bowie County jury for intoxication assault with a vehicle (TEX. PENAL CODE ANN. § 49.07 (Vernon Supp. 2008)) for which he received a sentence of five years' imprisonment and a fine of $2,500.00. He was also ordered to pay restitution of $24,250.82. McMillon's sentence was probated and he was placed on community supervision for ten years.

McMillon's sole complaint on appeal was the refusal of the trial court to allow him to attempt to impeach the witness by introducing evidence of prior misconduct by an expert witness, a former patrolman with the Texas Department of Public Safety (DPS). We affirm.

**FACTS OF THE CASE**

Michael Long had equipped his mule-drawn wagon for use on public roads by installing battery-powered travel lights and a slow-moving vehicle sign on the rear. While taking teenagers for a night ride on a Bowie County road near DeKalb, Texas, Long observed the oncoming headlights of a pickup truck coming from the opposite direction which seemed to be encroaching into his lane. After flashing the wagon lights and apparently failing to attract the attention of the other driver, Long realized that a crash was imminent and leapt from the wagon. The approaching truck crashed into the wagon and propelled it about 200 yards, where the wagon and truck were stopped when they struck a tree in their path.

Long suffered a broken ankle from his leaping fall from the wagon. While some of the passengers in the wagon remarkably suffered only minor injuries, others were severely injured. The wagon was destroyed, and the mules were slain.

Former DPS Patrolman David Lee was the initial law enforcement officer on the scene. On arrival, he discovered McMillon sitting on the tailgate of the wrecked truck. McMillon told Lee that he had been driving along and that he "suddenly looked up" to see the wagon in front of him, but that he saw the wagon too late to avoid hitting it. McMillon also maintained that the wagon was on the wrong side of the road.

Lee related his training and experience and was qualified as an expert. He then testified regarding the investigation which he had made of the collision, introducing photographs and drawings. Lee's conclusions, after having spoken with and observed McMillon and completed his accident investigation, opined that the wagon piloted by Long was in the proper lane, that it was properly lighted and signaled as required by law, that the truck driven by McMillon had strayed into the oncoming lane and struck the wagon, and that McMillon was under the influence of narcotics when the collision occurred.

Although there was substantial other evidence presented, we concentrate on the information above because it is the importance of Lee's accident investigation expert witness testimony to the State's case which McMillon emphasizes and which he indicates was most damaging to him.

**GRANT OF MOTION IN LIMINE**

Prior to the commencement of trial, the State had filed a motion in limine, seeking to bar McMillon from alluding or referring to "any investigation within the Department of Public Safety, it's [sic] officers or troopers, and any termination of employment of any troopers based on any such investigation." Immediately after Lee had completed his testimony, the jury was recessed and the motion in limine was considered. McMillon questioned Lee on voir dire concerning the circumstances under which his employment with the DPS was terminated. During that hearing, Lee admitted that he had falsified documents regarding traffic citations. He had issued dozens of "phantom" warning tickets, something which had caught the eye of the Tyler office supervisor of the Texarkana branch of the DPS. As a result of that investigation, Lee had resigned, being one of about nine officers in the Texarkana office (including Lee's supervising sergeant) who had resigned as a result of the investigation. Although the DPS officers were not required to maintain a quota or "minimum contacts" with the driving public, those who met "certain numbers" had poor evaluations by their superiors and the persons who received such poor evaluations received assignments which were not always favorable. No criminal charges were ever filed against Lee as a result of this investigation. Lee maintained that even though he had filed the false reports which had caused him to resign his post with the DPS, he had a general reputation for trustworthiness; except for the incidents of filing the "phantom" warning tickets, there was no evidence which contravened that testimony. During the course of the hearing on the motion in limine, McMillon maintained that if

4

Lee is shown to have made false entries on reports to the DPS, then McMillon believed that this fact was proper grist for the impeachment mill.

The trial court granted the State's motion in limine, prohibiting inquiry into or mention of phantom tickets and Lee's resignation arising from the investigation surrounding them. On appeal, McMillon maintains that the evidence of the attribution of the cause of the collision and the details concerning it were uniquely derived from expert testimony given by Lee and the conclusions at which he arrived as a result of his investigation of the crash and, further, that Lee's assessment concerning McMillon's impairment due to the use of drugs was critical. Therefore, positing that the intended impeachment evidence concerning Lee's filing of false reports with the DPS would have undermined Lee's credibility with the jury, McMillon claims harm from this error.

**STANDARD OF REVIEW**

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. The United States Supreme Court has long recognized that this Sixth Amendment protection is a fundamental right and is made obligatory on the States by the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403–04 (1965). However, although the Sixth Amendment guarantees the right to confront witnesses (which includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying),[1] this right is not an unqualified one, the

---

[1] *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

trial judge having wide discretion in limiting the scope and extent of cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude" under the *Confrontation Clause* to impose restrictions on cross-examination based on such criteria as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *Castle v. State*, 748 S.W.2d 230, 233 (Tex. Crim. App. 1988) ("Generally, the scope of cross-examination is within the control of the trial court and in the exercise of its own discretion."); *Toler v. State*, 546 S.W.2d 290, 295 (Tex. Crim. App. 1977). Each Confrontation Clause issue must be weighed on a case-by-case basis, carefully taking into account the defendant's right to cross-examination and the risk factors associated with admission of the evidence. *Lopez*, 18 S.W.3d at 222.

> An appellate court may not disturb a trial court's evidentiary ruling absent an abuse of discretion. In other words, as long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *Calloway v. State*, 743 S.W.2d 645, 651–652 (Tex. Crim. App. 1988). This is so because "trial courts . . . are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

*Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

In making a ruling on the motion in limine, the trial court had to consider the Texas Rules of Evidence. The portion of the Rules which most strongly favors the admissibility of the evidence which was barred is Rule 611(b), which states, "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." TEX. R. EVID. 611(b). McMillon also cites

6

us to Rule 608(a)(1), which says in part, "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness." TEX. R. EVID. 608(a).

McMillon's reliance on Rule 608(a)(1) overlooks the existence of the constraint on the use of such evidence as contained in part (b) of the same Rule, which says, "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." TEX. R. EVID. 608(b).

The right of confrontation means more than just being allowed to confront the witness physically. "Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). In *Davis*, 415 U.S. 308, 315 (1974), the United States Supreme Court held that to refuse to allow cross-examination of a witness about a juvenile probation which had not expired so as to show motive and bias because of possible pressure upon the witness by the prosecution violated the accused's right to confrontation. The rationale in that case was that the existing probationary status of the witness gave the witness a reason for fabrication so as to garner favor with those overseeing him.

> The introduction of evidence of a prior crime is . . . a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.

7

*Id.* It is important to note that the Texas Court of Criminal Appeals observed that the United States Supreme Court in *Davis* "repeatedly distinguished between the use of a prior conviction merely to show lack of truthful character and its use to show bias or motive." *Bilbrey v. State*, 594 S.W.2d 754, 757 (Tex. Crim. App. [Panel Op.] 1980).

In addition to the constraints on admission set out above, the trial court also has the authority to weigh proposed evidence and exclude it (even if relevant) "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

During the hearing on the State's motion in limine to exclude mention of the "phantom" tickets issued by Lee and his resignation from the DPS related to that action, McMillon emphasized repeatedly that he believed the actions taken by Lee reflected on his general trustworthiness. McMillon's position on appeal reflects that same reasoning as the basis for admission of that evidence as the proper grounds for impeachment. Nothing was argued or shown that the actions taken by Lee regarding the phantom tickets would demonstrate his bias or that his prior bad act provided him a motive to lie in this case. In other words, McMillon failed to make any connection between Lee's admitted misconduct and either a motive for Lee to testify untruthfully in this case or to show how that conduct would demonstrate that Lee harbored any bias against McMillon which would taint Lee's conclusions or his testimony.

In a rather old but somewhat similar case, a testifying police officer had previously filed a false report in a vice undercover operation (the officer had said he did not hear a gunshot when, in fact, he did). As a result of having made the false report, the officer was suspended without pay for fifteen days and transferred from the vice squad to the traffic section. The defendant proposed that in his case (wherein the officer was testifying about having witnessed the defendant engaged in public lewdness), the officer might be falsifying his story—as in the previous circumstance—in order to curry favor with his superiors; in other words, there was a motive to lie and the officer's prior history showed a propensity to do so. The trial court, while observing the fact that "[g]reat latitude should be allowed the accused to show a witness' bias or motive to falsify his testimony," also noted that "trial courts have considerable discretion as to how and when bias may be proved and as to what collateral evidence is material for that purpose." *Cloud v. State*, 567 S.W.2d 801, 802 (Tex. Crim. App. [Panel Op.] 1978). The impeachment evidence was held to have been properly excluded.

A witness's general character for truthfulness may be shown only through reputation or opinion testimony. "A witness's general character for truthfulness or credibility may not be attacked by cross-examining him (or offering extrinsic evidence) concerning specific prior instances of untruthfulness. . . . Our state evidentiary rules frown on unnecessary character assassination." *Hammer v. State*, No. PD-0786-08, 2009 Tex. Crim. App. LEXIS 513, at *17–18 (Tex. Crim. App. Apr. 8, 2009).

The attempt to use the instance during Lee's career in which he wrote "phantom" warning citations was nothing more than an instance of wrongdoing in his life and was not shown to bear on his general reputation for truthfulness.  There was nothing which revealed that this singular act of wrongdoing would create a bias on the part of Lee against McMillon or cause Lee to have a motive to testify untruthfully in this case.  Accordingly, it was properly barred as impeachment testimony.

We affirm.


Bailey C. Moseley
Justice


Date Submitted:     July 31, 2009
Date Decided:       August 12, 2009

Publish

10