

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00399-CR

JEFF P. WRIGHT                                                        APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 1405168D

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury convicted Appellant Jeff P. Wright of two counts of aggravated robbery with a deadly weapon and assessed his punishment at twenty years' confinement for each count. In three issues, Wright argues that the evidence is

---

[1]*See* Tex. R. App. P. 47.4.

insufficient to support his convictions and that the trial court committed reversible charge error and deprived him of his right to compulsory process. We will affirm.

## II. BACKGROUND

On March 3, 2015, Matthew Spencer and Dmarcus Ottey were working as asset protection specialists at the Home Depot in Euless. Ronald Hayward was working at the same location but was in training to become an asset protection specialist.

At around 11:30 a.m. that day, Spencer was walking around the store when he observed Wright grab two DeWalt batteries and try to open their packaging. Spencer called Ottey, who headed over and saw Wright doing the same thing. Unable to open the batteries' packaging with a knife, Wright walked to the back of the store and concealed one of the batteries in the front of his pants. He then walked to the garden center and concealed the other battery in his pants. Wright then walked to the store's main entrance. When he got there, he looked around several times before exiting the store, passing all points of sale without paying for the batteries.

Wright made it approximately three to four feet outside the door before Spencer ran around him and approached him from the front. Ottey was right behind Spencer. Spencer and Ottey identified themselves, and although Wright immediately apologized and offered to return the batteries, he pushed Spencer and tried to run away. A struggle ensued, during which Wright, Spencer, and Ottey fell to the ground. Wright was "fighting . . . like crazy" and kept trying to

2

reach into his pocket; Spencer pulled Wright's left arm behind his back in an effort to handcuff him; Ottey tried to secure Wright's legs; and Hayward, who arrived after Spencer and Ottey had confronted Wright, tried to help secure him. At some point, Wright pulled an open knife from his right pocket and thrust it at Spencer, who yelled "knife, knife, knife." Ottey saw the knife, and when he grabbed Wright's wrist, the knife was jarred loose and fell near Ottey, who kicked it away. Spencer and Ottey then handcuffed Wright, who was arrested by police. Although the store had three cameras located outside, none of them captured the struggle, which occurred under an awning above the main entrance.

## III. EVIDENTIARY SUFFICIENCY

Wright argues in his first issue that the evidence is legally insufficient to prove that he committed aggravated robbery as charged in count two of the indictment.[2] In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*,

---

[2]Count two alleged that Wright committed aggravated robbery against Ottey.

3

136 S. Ct. 198 (2015). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs v. State*, 434 S.W.3d 166, 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.[3] Tex. Penal Code Ann. § 29.02(a)(2) (West 2011). The offense becomes aggravated robbery if the person uses or exhibits a deadly weapon. *Id.* § 29.03(a)(2) (West 2011).

Wright first argues that there was no evidence that Ottey either felt threatened or feared imminent bodily injury or death. He directs us to this testimony from Ottey:

> Q. . . . When you saw that knife, did it get your attention?
>
> A. At the moment, I think my adrenaline was going so -- was so high that I didn't even think about the fact. Once I pushed it away, I was just trying to get him into custody.
>
> . . . .
>
> Q. And were you concerned about the fact that he had a knife in his hand?
>
> A. Not at the moment. It wasn't until after the fact like, oh, wow, he actually had a knife and this could have been a lot worse.

---

[3]The indictment charged Wright with committing robbery by threat and by placing in fear.

4

Wright contends that there was no evidence that he used or attempted to use the knife against Ottey and that Ottey never said that he felt threatened by Wright, that he was afraid of bodily injury or death, or that he believed injury or death was imminent. Wright ignores evidence that the jury could have reasonably relied upon to infer that Ottey either felt threatened or feared imminent bodily injury or death.

The court of criminal appeals has explained the distinction between when a robber *threatens* a person with imminent bodily injury or death and when a robber *places a person in fear* of imminent bodily injury or death. *See Boston v. State*, 410 S.W.3d 321, 325–26 (Tex. Crim. App. 2013). Specifically,

> [R]obbery-by-placing-in-fear does not require that a defendant know that he actually places someone in fear, or know whom he actually places in fear. Rather it requires that the defendant is aware that his conduct is reasonably certain to place someone in fear, and that someone actually is placed in fear.

*Id.* at 325 (quoting *Howard v. State*, 333 S.W.3d 137, 140 (Tex. Crim. App. 2011)). Alternatively,

> [O]ne can threaten without *necessarily* placing another in fear of imminent bodily injury. A logical inference . . . is that "threatening," as used in the Penal Code, does not require that the intended victim perceive or receive the threat, but "placing another in fear of imminent bodily injury does."

*Id.* at 326 (quoting *Olivas v. State*, 203 S.W.3d 341, 346 (Tex. Crim. App. 2006)).

The evidence viewed in the light most favorable to the verdict showed that Wright became engaged in a physical struggle with both Spencer and Ottey when they confronted him just outside of the main entrance to the store. During

5

the struggle, Wright pulled an open knife from his pocket and swung it at Spencer, who yelled "knife, knife, knife." At that point, Ottey, who was on the ground with Wright and Spencer attempting to control Wright's legs, grabbed for Wright's wrist and knocked the knife onto the ground. Spencer testified that this was by far the scariest interaction that he had had involving someone who was attempting to steal from the store and that he later thanked Ottey because he had feared for his life.

Officer Ed Peitrowski responded to the call and testified that both Ottey and Spencer "showed visible signs of elevated awareness. They were both nervous. Hands were shaking, very sweaty, very uppy, coinciding with an adrenaline from what they just experienced." He later elaborated, "They [Ottey and Spencer] were very excited, speaking very quickly as though they had just gone through a pretty traumatic experience that I'm sure . . . many people [don't] . . . experience on a daily basis." Hayward, who helped Spencer and Ottey detain Wright to some extent, testified that they were both scared because the confrontation involved a knife, a deadly weapon.

Although Ottey testified that he was not concerned about the consequences at the very moment that he was responding to Spencer's declaration that Wright had a knife, the jury nevertheless could have reasonably inferred from all of the evidence above that Ottey was actually placed in fear of imminent bodily injury or death. *See Clark v. State*, No. 03-12-00042-CR, 2013 WL 6459504, at *3–4 (Tex. App.—Austin Nov. 27, 2013, pet. ref'd) (mem. op.,

6

not designated for publication) (holding that victim's conduct and subjective feelings necessarily indicated that she was placed in fear of bodily injury). Wright also argues that the evidence is insufficient to prove that he acted intentionally or knowingly, but based on the evidence above, the jury could have rationally inferred that Wright was aware that his conduct was reasonably certain to place Ottey in fear of imminent bodily injury or death. *See Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982) ("Intent can be inferred from the acts, words, and conduct of the accused."); *see also* Tex. Penal Code Ann. § 6.03(b) (West 2011) (defining knowingly); *Howard*, 333 S.W.3d at 140 (discussing mental state of knowingly in context of robbery by placing in fear).

The evidence is legally sufficient to prove that Wright committed aggravated robbery as charged in count two of the indictment. We overrule Wright's first issue.

### IV. JURY CHARGE

In his second issue, Wright argues that the trial court's charge on guilt/innocence "did not properly instruct the jury regarding mens rea because aggravated robbery is a result of conduct offense, nature of the conduct offense, and circumstances surrounding the conduct offense and the jury charge contained only the definitions of 'intentionally' and 'knowingly' for result of conduct offenses." The State agrees that the charge was erroneous but contends that the error was not reversible.

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.*

There are three "conduct elements" that may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. Tex. Penal Code Ann. § 6.03; *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). An offense may contain any one or more of these "conduct elements," which alone or in combination form the overall behavior that the legislature intended to criminalize, and it is those conduct elements to which a culpable mental state must apply. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). The culpable mental state definitions in the charge must be tailored to the conduct elements of the offense. *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). A trial court errs by failing to limit the definitions of the culpable mental states to the conduct element or elements of the offense to which they apply. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995), *cert. denied*, 517 U.S. 1106 (1996); *Cook*, 884 S.W.2d at 491.

The trial court included the following definitions of intentionally and knowingly in the abstract portion of the charge, which included only the language

applicable to the placing-in-fear element of aggravated robbery, which is a result-of-the-conduct element:

> A person acts intentionally or with intent, with respect to a *result of his conduct* when it is his conscious objective or desire to cause the result.

> A person acts knowingly, or with knowledge, with respect to a *result of his conduct* when he is aware that his conduct is reasonably certain to cause the result. [Emphasis added.]

*See Gutierrez v. State*, 446 S.W.3d 36, 40–41 (Tex. App.—Waco 2014, pet. ref'd). But aggravated robbery by threat, as Wright was also alleged to have committed, is a nature-of-the-conduct offense. *See Garfias v. State*, 424 S.W.3d 54, 60 (Tex. Crim. App.) *cert. denied*, 135 S. Ct. 359 (2014); Tex. Penal Code Ann. § 6.03 (including additional conduct-elements language in definitions of "intentionally" and "knowingly"). By including incomplete abstract definitions, the trial court erred in its charge to the jury.[4]

Wright concedes that the error was not preserved but argues that he suffered egregious harm. Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App.

---

[4]Wright argues that the application paragraph did not "instruct the jury that the knife had to have been used or exhibited intentionally or knowingly," but a second culpable mental state was not required to be included with the deadly-weapon element of the offense. *See Bilbrey v. State*, 594 S.W.2d 754, 758–59 (Tex. Crim. App. [Panel Op.] 1980); *Butler v. State*, 928 S.W.2d 286, 288 (Tex. App.—Fort Worth 1996, pet. ref'd); *Chandler v. State*, 855 S.W.2d 38, 41 (Tex. App.—Fort Worth 1993, no pet.).

1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006). The appropriate inquiry for egregious harm is fact specific and must be performed on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

When the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that error in the abstract portion of the charge was egregious. *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1102 (2000). Although the definitions contained in the abstract portion of the charge were incomplete, the application paragraph nevertheless tracked both the language in the indictment and the corresponding statutory language, such that the intentionally or

10

knowingly mens rea clearly applied to the threaten or place-in-fear elements.[5] *See* Tex. Penal Code Ann. § 29.02(a)(2).

As for the state of the evidence and the arguments of counsel, Wright's theory of the case was that he did not *use or exhibit* a knife during the struggle with Spencer and Ottey, not that he did not *intentionally or knowingly* use or exhibit a knife during the struggle. Indeed, Wright called two witnesses: Hayward and Stacey Harvey, a Home Depot employee who witnessed part of the struggle. Hayward testified that he did not see a knife during the struggle, and Harvey testified that although she saw a knife on the floor, she did not see Wright use or exhibit a knife or swing or thrust a knife toward anyone. Consistent with that theory, during Wright's closing argument, counsel focused on whether Wright used or exhibited the knife, not on whether he did so intentionally or knowingly. Thus, the incomplete definitions contained in the abstract portion of the jury charge did not vitally affect Wright's unrelated defensive theory.

---

[5]The relevant application paragraph states,

Now, if you find from the evidence beyond a reasonable doubt that on or about the 3rd day of March, 2015, in Tarrant County, Texas, Jeff P. Wright, did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place Dmarcus Ottey in fear of imminent bodily injury or death, and the defendant used or exhibited a deadly weapon, to-wit: a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, then you will find the defendant guilty of aggravated robbery with a deadly weapon as charged in count two of the indictment.

Applying the proper standard, we cannot conclude that Wright suffered egregious harm. We overrule his second issue.

## V. COMPULSORY PROCESS

In his third issue, Wright argues that he was denied his right to compulsory process under the federal and state constitutions because the trial court granted Home Depot's motion to quash a subpoena duces tecum that his trial counsel had issued for Ricky Hood, Home Depot's district manager for loss prevention. Wright requested that Hood provide him with Home Depot's loss prevention policies and procedures.[6]

Criminal defendants have a right to compulsory process for obtaining witnesses. U.S. Const. amend. VI; Tex. Const. art. I, § 10. The right to compulsory process is "the right to present a defense [and] the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Coleman v. State*, 966 S.W.2d 525, 527 (Tex. Crim. App. 1998) (op. on reh'g). However, the right to compulsory process is not absolute. It does not guarantee the right to secure evidence from any and all witnesses; rather, compulsory process is guaranteed only for obtaining evidence that would be both material and favorable to the defense. *Id.* at 527–28. To exercise this right, the defendant must make a plausible showing to the trial

---

[6]Wright also requested a copy of Home Depot's video surveillance and Spencer's, Ottey's, and Hayward's loss prevention training and employee records, but the video was unavailable, and Wright waived the request for the employee records.

court, by sworn evidence or agreed facts, that the witness's testimony would be both material and favorable to the defense. *Id.* at 528. We review a claim that the trial court improperly quashed a subpoena for an abuse of discretion. *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd).

Home Depot's counsel argued at a pretrial hearing that the subpoena duces tecum should be quashed because Wright had subpoenaed Hood instead of Home Depot, and Hood "as an individual does not have the ability to bring with him proprietary and confidential documents belonging to Home Depot. And at this time, Home Depot has not authorized Mr. Hood to do so." As Hood had no authority to turn over Home Depot's loss prevention policies and procedures, the trial court could have reasonably concluded that the subpoena duces tecum should have been quashed on that basis.

Additionally, Wright's trial counsel vaguely noted at the pretrial hearing that she wanted Home Depot's loss prevention policies and procedures "so that it will put us in a position when we talk about the procedures at Home Depot to be prepared to do a proper cross-examination and proper impeachment if necessary." In the absence of any more specific explanation, the trial court could have reasonably concluded that mere cross-examination and impeachment of Spencer and Ottey regarding Home Depot's loss prevention policies and procedures would not have been material or favorable to Wright, who was accused of committing aggravated robbery as alleged in counts one and two of

the indictment.[7]   *See Weaver v. State*, 657 S.W.2d 148, 151 (Tex. Crim. App. 1983) ("Appellant presented nothing but the bare assertion that the witnesses were material and necessary as favorable character witnesses."); *Castillo v. State*, 901 S.W.2d 550, 553 (Tex. App.—El Paso 1995, pet. ref'd) ("Counsel's mere belief that a witness would support the defendant's alibi is insufficient to establish the witness's materiality to the defense.").

Wright argues that the trial court should have conducted an in camera review of the policies and procedures to determine whether Home Depot properly claimed that the subpoenaed documents were privileged trade secrets. *See* Tex. R. Evid. 507(a). Notwithstanding that Wright never requested an in camera inspection, and therefore failed to preserve this subargument for appellate review, *see* Tex. R. App. P. 33.1(a), Home Depot did not assert a trade secrets privilege against disclosure; it merely argued that Wright had subpoenaed Hood individually and that Hood did not have the authority to turn over the requested documents in his individual capacity.

We hold that the trial court did not abuse its discretion by quashing the subpoena duces tecum requesting Home Depot's loss prevention policies and procedures. We overrule Wright's third issue.

---

[7]Wright advances an additional reason in his brief—"whether [Spencer and Ottey] complied with the policies and procedures and whether the risk of termination would have given [them] a reason to lie about the events in order to keep their employment"—but this reason was not presented to the trial court for consideration.

## VI. Conclusion

Having overruled each of Wright's issues, we affirm the trial court's judgments of conviction.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 3, 2016

15