# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00411-CR

**Corey Javone Dorsey, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 264TH DISTRICT COURT OF BELL COUNTY
### NO. 78871, THE HONORABLE PAUL L. LEPAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Corey Javone Dorsey of the first-degree felony offense of aggravated robbery, *see* Tex. Penal Code § 29.03(a)(2), and assessed his punishment at thirty years' confinement in the Texas Department of Criminal Justice ("TDCJ"). In two related issues, appellant complains about error in the jury charge. We will affirm the trial court's judgment of conviction.

## BACKGROUND

At approximately 3 a.m. on April 19, 2018, Darshay Johnson and a friend left Bunny Club in Killeen, Texas, where Johnson worked as a dancer. They stopped at Mickey's, a convenience store, before driving to the friend's house. The friend had entered the house when Johnson, exiting her truck, was confronted by two men in dark clothing and long sleeves with pistols and ski masks. At trial, Johnson testified that the men were African American and of slim

build. One of the men, wearing gloves, covered her mouth with his hand while the other put a gun to her head. The second man then went through her truck and took her work bag, containing her dance clothes and shoes. He pointed the gun at her head once more and ordered her to strip naked. While she was removing her clothing, he threatened to shoot her for taking too long. After she had undressed, he ordered her to lie on the ground, groped her buttocks, and took the clothes she had been wearing. The two men ran off, and she heard gunshots. An officer with the Killeen Police Department ("KPD") testified that five spent 9mm shell casings were recovered nearby. Johnson saw the men enter a white four-door Mercedes with tinted windows. She testified that she thought she was going to die.

The next morning at approximately 3:15 a.m., dancer Riana Collins and two friends got off work at the Dollhouse Club. After stopping at a 7-Eleven, Collins dropped her friends off at their residences. While dropping off the second friend, Collins noticed a white Mercedes pull up behind her vehicle. She made a U-turn, and the Mercedes drove off. Collins dropped her friend off and parked up the street, texting the friend to make sure she was safe. The Mercedes again pulled up behind her, and she saw someone running up to the passenger's side of her vehicle. She partially rolled down the passenger's side window, when a second man knocked on her driver's side window. Collins testified that she believed the man had banged on the window with something metal, which she assumed was a gun because of the reflection and lighting. The man on the passenger's side reached into her vehicle through the partially opened window and opened her door. Both men were wearing masks; the man on the passenger's side pulled his down before reaching into the vehicle, but Collins was able to see his face for a couple of seconds. She testified that he was a "lighter skin[ned]" African American, and she was "pretty sure" he was wearing gloves. The man grabbed her work bag and purse. Collins

2

struggled with the man over the purse. Her fingers were injured in the struggle. The two men fled with the bag and purse back to the Mercedes, which Collins noted was a newer, four-door model. She testified that she was "pretty sure" the second man was also African American. When shown a lineup, Collins was unable to identify the man at the passenger's side whose face she had briefly seen.

Detective Mayra Ayala with the KPD reviewed surveillance footage from the parking lots of Mickey's, the Dollhouse, and Chix Gentlemen's Club, a third Killeen adult-entertainment establishment, located in the same building as Bunny Club. There was no working video from Bunny Club. Ayala testified at trial that she saw both Johnson's truck and a white four-door Mercedes with tinted windows, a sunroof, and a missing registration sticker—matching the description given by Johnson—on the Mickey's footage from April 19, 2018. No one exited the Mercedes, and she was able to see two individuals in the vehicle: a front passenger with lighter skin, a thin build, and dark clothing and a "thicker" driver with darker skin and possible facial hair. Ayala testified that the passenger was staring at Johnson. Video from Chix on the same day showed the Mercedes circling the parking lot. Ayala testified that several characters on the license plate appeared to be recognizable. She saw the same Mercedes in the parking lot of the Dollhouse in surveillance video from April 20, 2018. The front passenger, who appeared to have a thin build and was wearing dark clothing, opened the door and briefly walked to the back of the vehicle; in almost 30 minutes of footage, no one from the Mercedes entered the club.

In the early morning of April 21, 2019, KPD officers were deployed to monitor the parking lots of various Killeen adult-entertainment establishments in search of the Mercedes. Detective Larry Johnson testified that at approximately 3:30 a.m., he noticed a white Mercedes

3

with tinted windows and a sunroof enter the parking lot of Club Dreams. Using binoculars, he determined that two characters on the vehicle's license plate matched those of the Mercedes from the Chix surveillance footage. At around 5:00 a.m., the vehicle left the parking lot.

A short time later, Sergeant Miguel Mirabel, following the Mercedes in a marked squad car, witnessed the vehicle commit a traffic violation and conducted a traffic stop. He testified that as he approached the vehicle, he observed three men, two in the front and a third in the back, and he could smell burnt marijuana. The men were detained at the rear of the vehicle, and a search of the interior was conducted. According to the testimony of Detective Johnson, the driver was identified as appellant, the front passenger as Se'von Gambrell, and the back passenger as Marcus Pinkard.

Detective Odis Denton, who assisted Mirabel with the stop, testified that the man in the front passenger's seat, Gambrell, had an open backpack between his legs. During the search, officers discovered a 9mm black and silver Smith & Wesson handgun with a full magazine, as well as a second magazine, under the driver's seat. Officers also discovered marijuana on the passenger's side floorboard, packaged to deliver in small bags. The backpack contained two balaclava-style masks, one green and the other brown, and a pair of military-style gloves. A second .40 caliber handgun with a laser sight was found in the back center console.

Marcus Pinkard testified that he knew appellant and Gambrell from the Army and met up with appellant at a mall on April 19, 2018. Appellant told Pinkard that he was "hitting a lick" on exotic dancers. Pinkard explained that hitting a lick means "taking something that's not yours." He testified that on the night of April 20, 2018, and into the following morning, he, appellant, and Gambrell had gone to clubs on Sixth Street in Austin, Texas. Pinkard claimed he then fell asleep in the back of the Mercedes and only woke up when they were pulled over.

4

Electronic GPS logs from Pinkard's employment as a truck driver showed that his truck was not near San Marcos, Texas on the mornings of April 19th and 20th. Pinkard testified that he was working with his truck on those days. Pinkard also testified that he was the owner of the .40 caliber handgun found in the back console of the Mercedes.

Appellant agreed to provide a DNA sample; additional samples were obtained from Gambrell and Pinkard. At trial, Texas Department of Public Safety ("DPS") forensic scientist Andrew Lopez testified to the results of DNA testing of the balaclavas, gloves, and 9mm handgun. The green balaclava contained a mixture from four individuals. Appellant was excluded as a possible contributor, but Gambrell was not. The brown balaclava contained a mixture from three individuals. Gambrell could not be excluded as a contributor, and the results were inconclusive as to appellant. Lopez explained, "Inconclusive means that they do share some markers between the known and the evidentiary but there aren't any markers to definitely say they are excluded or [included.] It's in that gray area." With respect to the handgun, the back grip did not contain enough DNA to develop a usable profile. The left grip contained a mixture from three individuals. Once again, Gambrell could not be excluded as a contributor, and the results were inconclusive as to appellant. Lopez testified that it is possible to touch something and not leave behind DNA. DNA testing could not show who handled or fired the gun, only whose DNA is on it.

James Jeffress, another DPS forensic scientist, testified that the fired 9mm cartridge cases recovered from the robbery of Darshay Johnson were identified as having been fired by the Smith & Wesson handgun discovered under the seat in which appellant was sitting following the traffic stop.

5

In the abstract portion of its jury charge, the trial court, in relevant part, defined the offenses of aggravated robbery, robbery, and theft, and the culpable mental states for intent and knowledge and provided an overview of the law of parties. The application paragraph authorized the jury to convict if it found beyond a reasonable doubt that appellant:

> as alleged in the indictment, did then and there while acting either individually or as a party with another, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Darshay Johnson in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon.

The jury found appellant guilty of aggravated robbery. Following a sentencing hearing, the trial court sentenced him to thirty years' confinement in TDCJ. Appellant timely appealed his conviction, and this appeal followed.

## DISCUSSION

**Deadly Weapon Instruction**

In his first issue, appellant contends that the trial court erred by failing to instruct the jury that to convict appellant of aggravated robbery with a deadly weapon, the evidence needed to show that appellant knew that Gambrell would use or exhibit a deadly weapon, namely, the 9mm handgun. Appellant argues that the charge should have done so in two ways: 1) tailoring the culpable mental state of knowledge to the deadly weapon element of the offense[1] and, 2) in the application paragraph, requiring the jury to find that "the defendant did then and

---

[1] Appellant suggests that such an instruction could read as follows: "A person acts with knowledge that another is using or exhibiting a deadly weapon when he is aware that the other is using or exhibiting the weapon." For the sake of clarity and cohesion, we address this facet of appellant's argument when considering his second issue, concerning the tailoring of culpable mental states, below.

6

there personally use or exhibit a deadly weapon, to wit: a firearm, or knew that another person would use or exhibit a deadly weapon, to wit: a firearm."

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury-charge error). If the jury-charge error has not been properly preserved by an objection or request for instruction, *see* Tex. Code Crim. Proc. arts. 36.14, .15, as it was not here, reversal is required only upon a showing of "egregious harm," "which occurs when the error created such harm that the appellant was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019). Appellant must have suffered actual, and not merely theoretical, harm. *Id*.

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). Each statutory definition that affects the meaning of an element of the offense must be communicated to the jury. *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009); *Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986). The jury charge should tell the jury what law applies and how it applies to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The trial court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Mendez*, 545 S.W.3d at 552; *Vega v. State*, 394 S.W.3d 514, 519 (Tex.

7

Crim. App. 2013). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Mendez*, 545 S.W.3d at 552 (quoting *Delgado*, 235 S.W.3d at 249); *Taylor v. State*, 332 S.W.3d 483, 488 (Tex. Crim. App. 2011). When reviewing for error, courts must examine a charge "as a whole instead of a series of isolated and unrelated statements." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (internal quotation marks omitted). Jury charges "which fail to apply the law to the facts adduced at trial" are erroneous. *Gray v. State*, 152 S.W.3d 125, 128 (Tex. Crim. App. 2004).

The Court of Criminal Appeals has held that an indictment for aggravated robbery need not allege a culpable mental state as to the aggravating element, namely, use or exhibition of a deadly weapon. *See Bilbrey v. State*, 594 S.W.2d 754 (Tex. Crim. App. [Panel Op.] 1980). "The required elements of an indictment for aggravated robbery without actual injury," the Court explained:

> are that 1) a person 2) in the course of committing theft 3) with the intent to obtain or maintain control of property 4) intentionally or knowingly 5) threatens another with, or places another in fear of 6) imminent bodily injury or death and 7) uses or exhibits 8) a deadly weapon.

*Id*. at 759.[2] The Second Court of Appeals has likewise explained that "the deadly weapon element of an aggravated robbery charge does not carry a separate culpable mental state, nor is it required to carry one. Rather, each offense is required to have a culpable mental state, not each element of an offense." *Chandler v. State*, 855 S.W.2d 38, 41 (Tex. App.—Fort Worth 1993, no pet.). As such, it necessarily follows that a trial court need not instruct the jury that it find such a

---

[2] Elsewhere, the Court similarly notes, "The Legislature in defining the offense expressly placed two requisite mental states into the language of the statute: the offender must act with intent to obtain and maintain control over property, and his threatening or placing the victim in fear must be intentional or knowing." *Ex parte Santellana*, 606 S.W.2d 331, 333 (Tex. Crim. App. 1980).

culpable mental state in order to find the defendant guilty of the offense beyond a reasonable doubt. *See Crenshaw v. State*, 378 S.W.3d 460, 465 (Tex. Crim. App. 2012) ("The State is bound by the allegations in the charging instrument."); *see also* Tex. Code Crim Proc. art. 36.14 (requiring that the judge deliver a charge setting forth "the law applicable to the case").

Similarly, the Court of Criminal Appeals in *Vasquez v. State* concluded that a general reference to the law of parties in the application paragraph of the jury charge is sufficient, absent a narrowing request by the defendant, to incorporate the definition of the law from the abstract portion of the charge. 389 S.W.3d at 368. Here, the application paragraph included an instruction authorizing the jury to convict appellant if it found beyond a reasonable doubt that he, "while acting either individually or as a party with another," committed aggravated robbery and used or exhibited a deadly weapon. Such an instruction, coupled with the more complete statement of the law of parties in the abstract portion of the charge, is all the specificity that is required. The jury was required, as a matter of law, to find appellant, acting alone or as a party, used or exhibited a deadly weapon before it could convict. *See Butler v. State*, 928 S.W.2d 286, 288 (Tex. App.—Fort Worth 1996, pet. ref'd) ("[A] second culpable mental state is not required to be proved in connection with the aggravating element of the use of a deadly weapon.").[3]

---

[3] Relatedly, in *Davis v. State*, the defendant requested an instruction that the jury find he knew of an accomplice's intent to rob the victim before it could find him guilty of aggravated robbery. 651 S.W.2d 787, 792 (Tex. Crim. App. 1983). The Court of Criminal Appeals, emphasizing that the jury charge set forth the law of parties, concluded: "The court's charge tracked the language of the Penal Code, Secs. 7.01 and 7.02, V.T.P.C. When a refused charge is adequately covered by the charge given, no harm is shown. We find no harm and overrule the ground of error." *Id*. (internal citation omitted).

Here, appellant grounds his allegation of error with respect to the deadly weapon instruction in cases concerning sufficiency of the evidence and a trial court's authority to enter an affirmative deadly weapon finding in the absence of an affirmative finding by the jury. *See e.g., Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986); *Boston v. State*, 373 S.W.3d 832, 839 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013); *Wyatt v. State*, 367 S.W.3d 337, 340–41 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd, untimely filed); *Sarmiento v. State*, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). However, the requirement that the State prove a defendant knew a deadly weapon would be used in the commission of an offense is distinct from a purported requirement that the charge include an instruction necessitating the jury make such a finding. Indeed, rather than supporting appellant's contention, the cited cases instead undermine the rationale for the requested instruction.

In *Sarmiento*, for example, the Fourteenth Court of Appeals held that the trial court's deadly weapon finding was proper even in the absence of an affirmative finding by the jury that the defendant used a weapon or knew a weapon would be used. 93 S.W.3d at 570. The court acknowledged that while it is perhaps "conceivable" that a deadly weapon could be used without the "knowledge, assent, or approval of an accomplice," when use or exhibition is an element of the offense, as alleged in the indictment, the guilty verdict itself satisfies the necessary finding. As the court explained:

> [W]here the use of a deadly weapon is an element of the offense, the State automatically carries the burden of proving the defendant knew a weapon would be used or exhibited in the commission of the offense. In other words, even as a party, a defendant cannot be convicted unless his participation is accompanied with the intent "to promote or assist the commission *of the offense.*" The offense here was aggravated robbery, and the use of a deadly weapon was alleged in the

10

indictment as an element of the offense. Thus, before jurors were authorized to find [defendant] guilty, *even as a party,* they first had to believe beyond a reasonable doubt that [he] knew a deadly weapon would be used in the commission of the offense. By its verdict, the jury necessarily made the factual finding to support the entry of an affirmative finding of the use or exhibition of a deadly weapon upon the judgment.

*Id.* (internal citations omitted). Similarly, the First Court of Appeals has concluded, "By finding the [defendant] guilty as alleged in the indictment, the jury found that [the defendant] intended that a deadly weapon would be used during the course of the aggravated robbery. By finding this intent, the jury necessarily found that [the defendant] knew a deadly weapon would be used." *Harris v. State*, No. 01-01-00513-CR, 2003 WL 360264, at *2 (Tex. App.—Houston [1st Dist.] Feb. 20, 2003, pet. ref'd) (mem. op., not designated for publication).[4]

The Fifth Court of Appeals has made clear the importance of *Sarmiento*'s reasoning to the present case. As the court explains, "under the reasoning of *Sarmiento* . . . , the charge imposed the same restriction [the defendant] contends the trial court 'failed' to impose— that the jury could not find [him] guilty as a party unless it found beyond a reasonable doubt that [the defendant] knew [his accomplice] was armed." *Ghanbari v. State*, No. 05-17-00257-CR 2019 WL 1649455, at *16 (Tex. App.—Dallas Apr. 17, 2019, pet ref'd) (mem. op., not designated for publication). Here, the indictment alleged, in relevant part, that appellant "while acting individually and as a party with another . . . did then and there use or exhibit a deadly weapon, to wit: a firearm." Consequently, the jury, by finding appellant guilty, necessarily

---

[4] Insomuch as appellant's requested instruction requires that the jury find he "personally" used or exhibited a deadly weapon, "[e]vidence that a defendant personally used or exhibited a deadly weapon is not required for conviction when the defendant is prosecuted as a party." *Bradley v. State*, No. 14-08-00038-CR, 2008 WL 4647289, at *3 (Tex. App.—Houston [14th Dist.] Oct. 21, 2008, pet. ref'd) (mem. op., not designated for publication)

11

found that he knew a deadly weapon would be used. Any failure to instruct the jury to make such a finding in order to convict was not erroneous.

Lastly, the Court of Criminal Appeals has stated in dictum that "in order to be entitled to a charge requiring the jury to find he knew of a companion's intent to use a deadly weapon . . . in order for it to convict him of aggravated robbery," a defendant would at least have to have refuted the evidence "that the agreement to rob had contemplated use of a deadly weapon, the aggravating factor." *Mayfield v. State*, 716 S.W.2d 509, 516 & n.5 (Tex. Crim. App. 1986), *overruled on other grounds by Solomon v. State*, 49 S.W.3d 356 (Tex. Crim. App. 2001).

In the present case, Appellant's efforts at refutation were largely limited to attempting to elicit testimony on cross-examination that only one of the robbers used a weapon and emphasizing that the results of the DNA testing were inconclusive as to appellant. Conversely, the evidence tending to prove appellant's use or knowledge was extensive. Darshay Johnson's testimony suggested both robbers may have been armed. She stated that the men had "guns" and "pistols." When asked on cross-examination if only one man had a weapon, she responded, "I don't recall." Regardless, during the robbery, the man who put his hand over Johnson's mouth continued to restrain her despite the other's use of a weapon and did so throughout the course of the robbery. The next night, both men participated in the robbery of Riana Collins, who testified that she believed at least one of the men was armed.[5] Moreover, Collins testified that the armed man was next to the driver's side window, while the man by the

---

[5] We have previously held that the use of a weapon in multiple robberies during a crime spree supports a finding that one robber was aware of the other's gun and knew he would be using or exhibiting it during the robbery. *Boston v. State*, 373 S.W.3d 832, 839 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013).

passenger's side was of a "lighter skin complexion." Multiple references were made during the trial to Gambrell's "lighter skin" and appellant's "darker skin." Collins's testimony suggests that the armed individual was in fact appellant. The handgun used in the Johnson robbery was found underneath appellant's seat when he and Gambrell were stopped. The State's DNA expert testified that while Gambrell's DNA was found on the left grip of the gun, the DNA was a mixture of three individuals, and results were inconclusive as to appellant. He also testified that it is possible to touch something and not leave behind DNA. Additional evidence showed that at least one of the robbers used gloves. In the face of all this evidence, appellant's efforts were insufficient to refute the evidence that he used or knew of Gambrell's use of a gun. Consequently, appellant would not have been entitled to his requested instruction. The court's failure to include the instruction was therefore not error. When no error exists, the inquiry ends. *See Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). For the foregoing reasons, we overrule appellant's first issue.

**Tailoring Culpable Mental States**

In his second issue, appellant contends that the trial court erred by failing to tailor the definitions of the culpable mental states to the elements of the offense to which they applied. Although appellant concedes that the trial court provided complete definitions for "intentionally" and "knowingly" in the abstract portion of the jury charge, he argues that the court failed to link the elements of aggravated robbery with their respective culpable mental states. Appellant alleges that he suffered egregious harm as a result of the court's error. Because we disagree and conclude that he was not egregiously harmed by any error, we need not decide whether the court erred in its charge.

13

The Penal Code delineates three "conduct elements" that can be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *see Robinson v. State*, 466 S.W.3d 166, 170 (Tex. Crim. App. 2015) (explaining "three different categories of offenses based on the offense-defining statute's gravamen, or focus: 'result of conduct,' 'nature of conduct,' or 'circumstances of conduct'"); *see* Tex. Penal Code § 6.03 (defining culpable mental states). An offense may contain any one or more of these "conduct elements," which alone or in combination form the overall behavior that the Legislature has intended to criminalize, and it is those essential "conduct elements" to which a culpable mental state must apply. *McQueen*, 781 S.W.2d at 603. Thus, the statutory definitions of the culpable mental states in a jury charge should be tailored to the conduct elements of the offense. *Price*, 457 S.W.3d at 441; *Cook v. State*, 884 S.W.2d 485, 487–88 (Tex. Crim. App. 1994).

As discussed above, if we find that error exists, we must analyze the error for harm. *Arteaga*, 521 S.W.3d at 333. Because appellant did not properly preserve his complaint by objecting at trial, a reversal will be granted only if error is present in the charge and if such error caused "egregious harm." *Chambers*, 580 S.W.3d at 154.

Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Arteaga*, 521 S.W.3d at 338; *Marshall*, 479 S.W.3d at 843; *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)); *see Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) ("[Egregious harm] is a

14

difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial."). We will not reverse a conviction unless the defendant has suffered "actual rather than theoretical harm." *Villarreal*, 453 S.W.3d at 433; *see Marshall*, 479 S.W.3d at 843 ("[C]ourts are required to examine the relevant portions of the entire record to determine whether appellant suffered actual harm, as opposed to theoretical harm, as a result of the error."); *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) ("An egregious harm determination must be based on a finding of actual rather than theoretical harm.").

In examining the record to determine whether jury-charge error has resulted in egregious harm, we consider: (1) the entirety of the jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Arteaga*, 521 S.W.3d at 338; *Marshall*, 479 S.W.3d at 843; *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. The analysis is "fact specific and is done on a 'case-by-case basis.'" *Arrington*, 451 S.W.3d at 840 (quoting *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013)).

Here, the State concedes the charge erroneously failed to limit the culpable mental states to the appropriate conduct elements of the offense of aggravated robbery. However, the State asserts that the record does not establish egregious harm. Assuming without deciding that the charge is erroneous, we agree that the error did not egregiously harm appellant.

### Entirety of the Jury Charge

When the error involves a misstatement of the required culpable mental states, we "may consider the degree, if any, to which the culpable mental states were limited by the

application portions of the jury charge." *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994); *Cook*, 884 S.W.2d at 492 n.6. In this case, even if the trial court gave incorrect, non-tailored definitions of the culpable mental states in the abstract portion of the charge, the court's instruction in the application paragraph properly applied the law to the factual context. The trial court instructed the jury as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, Corey Javon Dorsey, on or about the 19th day of April, 2018, in the County of Bell and State of Texas, as alleged in the indictment, did then and there while acting either individually or as a party with another, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Darshay Johnson in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to wit: a firearm, you will find the defendant "Guilty" of the offense of Aggravated Robbery and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

Thus, the jury was instructed that it could only convict appellant of aggravated robbery if it found that he, acting alone or as a party, had "intentionally or knowingly" threatened or placed Johnson in fear of imminent bodily injury by using or exhibit a deadly weapon. We conclude that the application paragraph appropriately required the jury to find that appellant's threatening Johnson or placing her in fear must have been done "intentionally" or "knowingly."

The Court of Criminal Appeals has failed to find harm in near-identical circumstances. In *Robinson v. State*, the Court addressed a charge instructing the jury:

> [I]f you believe from the evidence beyond a reasonable doubt that Roxanne Michalick was the owner of the property, and that the defendant, Charles Chuck Robinson, in Harris County, on or about February 22, 1977 while in the course of committing theft from the said Roxanne Michalick, and with intent to obtain and maintain control of said property, intentionally and knowingly threatened or placed the said owner in fear of bodily injury or death and used or exhibited

16

a deadly weapon, to wit, a pistol, you will find the defendant guilty of aggravated robbery.

596 S.W.2d 130, 131–32, 134 (Tex. Crim. App. 1980). The Court, enumerating the "essential ingredients" of aggravated robbery, concluded, "the culpable mental state for the theft offense committed or attempted, is likewise not an essential element of the offense of aggravated robbery, the culpable mental state for which was charged in the instant case as 'knowingly and intentionally.'" *Id.* at 134.[6] Accordingly, as the application paragraph of the jury charge in appellant's case sufficiently clarified the conduct element to which each culpable mental state attached, we conclude that a consideration of the entire jury charge weighs against a finding of egregious harm.

### State of the Evidence

The second factor requires us to review the state of the evidence, including the contested issues and weight of probative evidence. *Villarreal*, 453 S.W.3d at 433. Under this factor, "we look to the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused appellant actual harm." *Arrington*, 451 S.W.3d at 841.

[6] Similarly, in *Lott v. State*, the Fifth Court of Appeals found that the trial court committed error by failing to limit the *definitions* in the jury charge to the conduct elements to which they applied but concluded that the culpable mental states of "knowingly" and "intentionally" were sufficiently limited to their relevant conduct element by the following statement in the *application paragraph* of the charge: "[Appellant] 'intentionally and knowingly' placing Castro, a witness, in fear of imminent bodily injury or death by using or exhibiting a deadly weapon, a knife." No. 05-00-01999-CR, 2002 WL 523526, at *4 (Tex. App.—Dallas Apr. 9, 2002, no pet.) (mem. op., not designated for publication) (internal citations omitted); *see also Green v. State*, No. 05-01-00653-CR, 2002 WL 1822437, at *5 (Tex. App.—Dallas Aug. 9, 2002, no pet.) (mem. op., not designated for publication) (culpable mental states sufficiently limited by statement that defendant committed robberies, by "intentionally and knowingly threaten[ing] or plac[ing] the said complainant in fear of imminent bodily injury or death, and the defendant, either acting alone or as a party, did then and there use or exhibit a deadly weapon . . . .'") While the holdings from our sister courts are non-precedential, we find them useful for illustrative purposes.

17

Where an appellant's mental state was not an issue in controversy during the trial or at closing arguments, reviewing courts—including this Court—have been unwilling to find egregious harm based upon a trial court's failure to tailor culpable mental states to elements of an offense. *Herrera v. State*, 527 S.W.3d 675, 680 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) ("The issue of [defendant]'s mental state was not at all a focus of the trial or the closing arguments."); *Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.) (holding that similar jury-charge error was not egregiously harmful in part because only issues that were seriously contested at trial had nothing to do with defendant's mental state); *Sheppard v. State*, No. 03-00-00220-CR, 2000 WL 1752763, at *2 (Tex. App.—Austin Nov. 30, 2000, no pet.) (mem. op., not designated for publication) ("Because appellant's commission of the 'conduct elements' was not disputed, the court's failure to tailor a separate and distinct definition of the culpable mental state applicable to each element, if error, did not deny appellant a fair and impartial trial."); *Lott v. State*, No. 05-00-01999-CR, 2002 WL 523526, at *4 (Tex. App.—Dallas Apr. 9, 2002, no pet.) (mem. op., not designated for publication) ("Mental states and the conduct element to which they apply were simply not contested. Based on our examination of the record, it is difficult to see how the trial court's error could be considered harmful, much less egregiously so.").

The only contested issue at trial was the identity of the robbers. As the defense summarized in closing, "What we—what we do know beyond a reasonable doubt is that the State has not proved their case, that the person who was involved in that robbery along with Mr. Gambrell evidently was my client." The State agreed, "Maybe it wasn't Corey Dorsey. That's all they have." Appellant never specifically asserted that he lacked the requisite culpable mental state to commit the charged offenses, nor did any evidence raise this inference. He

18

likewise fails to show that the jury was or could have been confused by the complained-of charge defect. Consequently, after reviewing the evidence and the contested issues at trial, we conclude that the state of the evidence weighs against a finding of egregious harm.

### *Arguments of Counsel*

Under this factor, we consider whether any statements made during the trial by the prosecutor, the defense counsel, or the trial court may have exacerbated or ameliorated the error in the jury charge. *Arrington*, 451 S.W.3d at 844.

Appellant alleges that under this factor, he was harmed because the State "referenced the culpable mental states and the complainant Johnson's fear and was able to rely on the omissions from the charge to gloss over this requirement without specifically addressing Dorsey's intent or knowledge."

As discussed previously, the culpable mental states were not a contested issue at trial. As the prosecution framed it:

> [E]verything there [the jury charge] is proven and not even in dispute. Go two through six, not even in dispute. The date, the location, the victim, what these two did, what the result was. That they were acting as parties. You can check those off. The only one I even heard, the only one they could even have a leg to stand on is, just maybe it wasn't my guy.

Indeed, defense counsel seemingly agreed, conceding, "We know beyond a reasonable doubt that on April 19, 2018 Miss Johnson was robbed at gunpoint by two African-American males." The prosecution briefly touched on the element of *mens rea*, arguing, "Intentionally, knowingly, threaten or place her in fear of imminent bodily injury or death. She told you she thought she might die. She was in fear of death or serious bodily injury from being shot." However, if anything, "[t]he prosecutor's argument directing the jury to the respective required culpable

19

mental states for the separate conduct elements ameliorated the error in the charge." *Faulkenberry v. State*, No. 03-18-00265-CR, 2018 WL 3625791, at *6 (Tex. App.—Austin July 31, 2018, pet. ref'd) (mem. op., not designated for publication). Defense counsel neither directly addressed the required culpable mental states for the conduct elements nor referenced the definitions in the charge. *Id.* Similarly, the State did not highlight or rely on the complained-of jury charge definitions but instead focused almost exclusively on appellant's identity. We conclude that the arguments of counsel weigh against a finding of egregious harm.

### Other Information in the Record

As to the fourth factor, our review of the record has disclosed no other relevant information that requires our consideration in the egregious harm analysis.

### Conclusion Regarding Harm

After reviewing the record and considering the relevant factors, we hold that the trial court's instructions defining the culpable mental states in the abstract portion of the jury charge, if erroneous, did not egregiously harm appellant. We overrule appellant's second issue.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   June 17, 2021

Do Not Publish

21